IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DYLAN J. SPARKMAN, | CV 18-00039-H-BMM-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| MEIGHAN ROBBINS, CHRISTINE SLAUGHTER, MYRON BEESON, and REGINALD MICHAEL, | |
| Defendants. | |

This matter comes before the Court on Plaintiff Dylan Sparkman's

Complaint (Doc. 2) alleging violations of his Fourteenth Amendment due process

rights under the United States Constitution.  The Complaint fails to state a claim

upon which relief may be granted and therefore this matter should be dismissed.

## I.  STATEMENT OF THE CASE

### A.      Parties

Plaintiff Dylan Sparkman is proceeding in forma pauperis and without

counsel.  He is incarcerated at the Montana State Prison (MSP) in Deer Lodge,

Montana.  The named Defendants are Meighan Robbins, Christine Slaughter,

Myron Beeson, and Reginald Michael. (Complaint, Doc. 2 at 1.)

**B.  Statement of Facts**

In November, 2017, Mr. Sparkman was housed in MSP low-security and worked for the low-security dining services.  He was participating in sex-offender treatment, which the Board of Pardons and Parole required him to complete before he could be eligible for parole.

On November 15, 2017, Mr. Sparkman was at work in the low-security dining-hall.  At approximately 3:40 p.m., he was carrying dirty dishes into the dish-tank area, when he passed by Defendant Meighan Robbins, a mental health counselor at MSP.  Mr. Sparkman accidently bumped into Ms. Robbins' shoulder. He alleges the contact was very minor and he immediately apologized to Ms. Robbins.  Ms. Robbins replied "excuse me" and left without further comment.

Approximately eighty minutes later, Mr. Sparkman was asked by his boss to return to his housing unit.  Upon arrival at the housing unit, the on-duty sergeant put Mr. Sparkman into handcuffs and brought him to Locked-Housing (punitive segregation).  Mr. Sparkman asked several correctional officers why he was being taken to Locked-Housing but no answer was provided.  At approximately 9:00 p.m., Mr. Sparkman was served a major disciplinary infraction for a #4111-Assault on a Staff Member, regarding the earlier incident with Ms. Robbins.

2

On November 21, 2017, Disciplinary Hearing Officer Christine Slaughter conducted a disciplinary hearing.  Mr. Sparkman read a written statement to DHO Slaughter explaining his version of the incident.  DHO Slaughter told Mr. Sparkman that she reviewed the video of the incident and spoke with Ms. Robbins. Ms. Robbins admitted that Mr. Sparkman apologized immediately and that she "thought nothing of it" (regarding the shoulder-bump").  DHO Slaughter told Mr. Sparkman that when reviewing the video, the contact appeared to be minor, but she did not think it was accidental.  She indicated that even though the contact was slight, that was enough to find him guilty.  She also stated that after the shoulder bump, Mr. Sparkman walked behind Ms. Robbins across the chow hall and stood behind Ms. Robbins for a few minutes.  Mr. Sparkman explained he was walking behind Ms. Robbins to get the gloves he needed to serve dinner to the inmates.  He told DHO Slaughter that he stood behind Ms. Robbins because she was talking to the Low-Side Dining Supervisor and there was not enough room for him to move past both Ms. Robbins and the supervisor.  DHO Slaughter commented that Mr. Sparkman continued to wait even though another inmate walked past Ms. Robbins.  Mr. Sparkman explained he was waiting patiently for Ms. Robbins to move because he did not want to risk bumping into her.  Mr. Sparkman explained that he did eventually walk past Ms. Robbins, after waiting for about a minute.  He

stated that when the shoulder bump occurred, he was working, had dirty dishes in his hands, and was putting those dirty dishes into the dish-tank.  Mr. Sparkman said Ms. Robbins was walking on the wrong side of the hall when the incident occurred (a railing separates the hall into two sides; one side is for entering the hall and the other is for exiting).  He explained that Ms. Robbins entered the cafeteria through the exit side of the hall which is next to the dirty dish slot that Mr. Sparkman was using.

Mr. Sparkman told DHO Slaughter that he believes the write-up should be dropped entirely or at least be dropped from a major infraction to a minor infraction.  He argued that he was never given a warning, that Ms. Robbins did not attempt to correct the behavior before issuing the disciplinary infraction, he did not know he was doing anything wrong because the rule was not properly explained, and he did not have advanced notice nor reason to believe that his conduct was prohibited.

DHO Slaughter found Mr. Sparkman guilty of a #4111-Assault on a Staff Member and sentenced him to 20 days in punitive segregation.  She also referred him to the Unit Management Team which resulted in a security reclassification.  Mr. Sparkman argued that the punishment was too severe for such a minor event, but DHO Slaughter would not reconsider the sentence.

Mr. Sparkman appealed the disciplinary decision arguing there was insufficient evidence and documentation to support the finding, that disciplinary procedures were not followed, and the sanction is excessive.

On November 22, 2017, the Unit Management Team reclassified Mr. Sparkman.  As a result of the reclassification, Mr. Sparkman was terminated from sex offender treatment (which was required before Mr. Sparkman could become parole eligible), he was moved from low-security housing to the more restrictive high-security housing, he lost his job with dining services, and he lost his "clear conduct" which is a factor considered by the parole board.

On November 29, 2017, Mr. Sparkman signed the reclassification and appealed the decision.  On November 30, 2017, Warden Beeson decided Mr. Sparkman's appeal and found that there was insufficient evidence to support the guilty finding for the #4111-Assault on a Staff Member.  Warden Beeson reduced the violation from #4111-Assault on a Staff Member to #4235-Threatening Any Other Person.

On December 5, 2017, Mr. Sparkman was moved from punitive segregation into high-security housing.  He received Warden Beeson's appeal decision on December 12, 2017.  Even though Warden Beeson claimed to "reduce" the infraction level, none of Mr. Sparkman's liberty interests were restored nor were

5

any of the punishments reduced.  Mr. Sparkman immediately wrote to Warden
Beeson and asked to reappeal the decision regarding the "reduction" from a #4111
to a #4235.  Warden Beeson replied to the Mr. Sparkman's letter on December 13,
2017 stating, "The present process is the final stage in your appeal.  It doesn't go
to Helena D.O.C."

On December 17, 2017, Mr. Sparkman wrote to the Disciplinary Appeal
Administrator, realleging that his due process rights had been violated because he
did not have a chance to defend himself against the new set of allegations, Warden
Beeson gave no factual basis as to why he changed the #4111 to a #4235, and
violation #4235 is unclear in that Mr. Sparkman did not know that his conduct was
prohibited, nor would any reasonable person.  Mr. Sparkman never received a
response from the Disciplinary Appeal Administrator.

On December 20, 2017, Mr. Sparkman sent a letter to Defendant Michael,
the Director of the Montana Department of Corrections explaining the incident
and arguing that his constitutional right to due process had been violated and that
the sanctions imposed by DHO Slaughter were too severe for such a minor
incident.  Director Michael denied Mr. Sparkman's requests on January 5, 2018,
claiming that he did not handle disciplinary decisions.  Mr. Sparkman, however,
has read letters Director Michael sent to other inmates wherein he handled

disciplinary decisions and even dismissed disciplinary infractions.

Mr. Sparkman has also been told by other prison staff that they would not have issued a disciplinary infraction regarding Mr. Sparkman's incident with Ms. Robbins, without at least giving the Mr. Sparkman a warning.

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.  Standard

Because Mr. Sparkman is a prisoner proceeding in forma pauperis, the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation

omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). This rule requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the

8

factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

### B.  Analysis

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a protected liberty interest and then show that the procedures attendant upon the

deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Prisoners are entitled to due process protections when subject to disciplinary sanctions that implicate "a protected liberty interest–that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014)(*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In considering whether conditions impose an atypical and significant hardship courts may consider the conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *Ramirez*, 334 F.3d at 861.

Mr. Sparkman argues his liberty interests have been infringed in two respects. First, he contends the disciplinary sanction implicated a protected liberty interest because he was terminated from sex offender treatment which was required by the parole board and as a result he was ineligible for parole. Sexual offenders serving criminal sentences do not have a constitutional right to

10

rehabilitative treatment.  *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 470 (9th Cir. 1989).  In addition, denial of parole eligibility due to an inability to complete sex offender treatment, does not implicate a protected interest.  Prisoners have "no constitutional or inherent right" to parole.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  A state may create a liberty interest in parole, but the mere presence of a parole system in a state does not give rise to a constitutionally protected liberty interest in parole.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010).  A state creates a liberty interest in parole only when its statutory parole provisions use mandatory language creating a presumption that parole release will be granted and limits the parole board's discretion.  *Allen*, 482 U.S. at 373-81.  Within the Montana statutory scheme under which Mr. Sparkman was sentenced, no liberty interest existed under the due process clause.  *Worden v. Mont. Bd. of Pardons & Parole*, 962 P.2d 1157, 1165 (Mont. 1998).  Where there is no liberty interest in parole, there is no liberty interest in parole eligibility.  *Fernandez v. Nevada*, 2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009)(citing *Greenholtz*, 442 U.S. 1).

Secondly, Mr. Sparkman alleges his disciplinary sanction implicated a protected liberty interest because he was placed in a higher and more restrictive security classification.  Generally, a classification to a higher custody level does

11

not place an atypical or significant hardship on an inmate sufficient to give rise to a protected liberty interest. *See Sandin,* 515 U.S. at 486 *(*placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.")*; Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)(finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)(inmates do not have a liberty interest in their classification status).

The level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). But in making this determination, courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (*quoting Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013).

Mr. Sparkman states that he was given 20 days punitive segregation and then reclassified to the higher security side of the prison. But he fails to allege how the conditions in segregation and/or the higher security side of the prison was an atypical and significant hardship. There has been no showing that the conditions in those areas of the prison did not mirror conditions imposed on inmates in administrative segregation or protective custody. *See Ramirez*, 334 F.3d at 861. The Complaint falls short of alleging conditions that have been found to be an atypical and significant hardship. *See Wilkinson,* 545 U.S. at 223–24 (holding that prisoner was subject to an atypical and significant hardship by being given indefinite detention in a supermax prison where no conversation was permitted and lights were on for 24 hours a day); *Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003)(holding that disabled prisoner placed in administrative segregation established an atypical and significant hardship because prisoner was denied use of his wheel chair for more than two months that created severe difficulty for prisoner to practice hygiene and forced prisoner to drag himself across a vermin-infested floor). Mr. Sparkman has not shown the deprivation of a protected liberty interest, therefore, his due process claims

13

regarding his disciplinary write-up and reclassification fail to state a claim.

Even if Mr. Sparkman could establish a deprivation of a protected liberty interest, he has failed to allege that his due process rights were denied.  A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation implicating a liberty interest.  *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (*citing Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  *Id*. at 563-71.  As long as the five minimum *Wolff* requirements are met, due process has been satisfied.  *Brown*

14

*v. McCormick*, 89 F.3d 844 (9th Cir. 1996).  Some evidence must support the decision of the hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Once these protections have been provided, due process is satisfied if there is any evidence in the record that could support the conclusion reached by the officials. *Toussaint v. McCarthy*, 801 F.2d 1080, 1104-05 (9th Cir. 1986) *overruled in part on other grounds, Sandin*, 515 U.S. 472.

There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)).  "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making."  *Jones v. Woodward*, 2015 WL 1014257, *2 (E.D. Cal. 2015) (*citing Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983)).

Here Mr. Sparkman admits he was served with a major disciplinary infraction on November 15, 2017.  (Complaint, Doc. 2 at 2, ¶ 8.)  He admits he attended his disciplinary hearing on November 21, 2017 and was allowed to

15

present rebuttal evidence.  (Complaint, Doc. 2 at 3, ¶ 9.)  He admits that the hearing officer reviewed the video of the incident, spoke with Ms. Robbins, and gave her reasons for her decision.  (Complaint, Doc. 2 at 3, ¶ 11.)  Mr. Sparkman has not alleged that he was denied any of the procedural requirements from *Wolff*. He further admits that he accidently bumped into Ms. Robbins' shoulder and thereafter was seen waiting behind him.  Thus, the Court finds that there was evidence in the record that could support the conclusion reached by Defendants.

## III.  CONCLUSION

The Court has considered whether Mr. Sparkman's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  Mr. Sparkman's allegations fail to state a plausible claim upon which relief may be granted.

For the reasons set forth above, the Court finds that the deficiencies set forth here could not be cured by the allegation of additional facts.  *See* Fed. R. Civ. P 12(b)(6); *Iqbal*, 556 U.S. at 678.  Amendment would be futile because any new facts consistent with the complaint could not cure the deficiencies identified in the complaint.  *Schreiber Distrib. Co. V. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986).  The Court therefore recommends that the case be dismissed without leave to amend and with prejudice for failure to state a claim.  *Rutman*

*Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Based upon the foregoing, the Court issues the following:

### RECOMMENDATIONS

1.  This matter should be DISMISSED for failure to state a federal claim.

2.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.  The record makes plain the Complaint lacks arguable substance in law or fact.

4.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Sparkman failed to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Sparkman may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 31st  day of October, 2018.


     */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[1]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Sparkman is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.